# United States Court of Appeals
## For the First Circuit

No. 01-2614

UNITED STATES OF AMERICA,

Appellee,

v.

ROBERT CYR,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, <u>U.S. District Judge</u>]

Before

Boudin, <u>Chief Judge</u>,
Torruella and Lipez, <u>Circuit Judges</u>.

<u>Peter Charles Horstmann</u>, with whom <u>Fishman, Ankner & Horstmann, LLP</u> was on brief for appellant.
<u>Dickens Mathieu</u>, Assistant U.S. Attorney, with whom <u>Michael J. Sullivan</u>, United States Attorney, was on brief for appellee.

July 29, 2003

**LIPEZ**, **Circuit Judge**.  This sentencing appeal requires us to address, in part, the interaction between the "related sentence" and "relevant conduct" provisions in the United States Sentencing Guidelines ("Guidelines"), both of which may limit the impact of a defendant's prior criminal record on the calculation of his criminal history category for an instant offense.

**I.**

On December 7, 2000, a federal grand jury returned a 27-count superseding indictment charging Robert Cyr and numerous other co-defendants with conspiracy to possess heroin with intent to distribute.  Although the indictment included a host of additional charges against Cyr alone, the defendant pled guilty to only the drug conspiracy count (Count One), and to conspiracy to launder money (Count Twenty-Seven), pursuant to a plea agreement reached on February 23, 2001.  On October 26, 2001, the district court sentenced Cyr to concurrent prison terms of 235 months on Count One and 120 months on Count Twenty-Seven, to be followed by five years of supervised release.

Cyr raises two challenges to his sentence on appeal. First, he argues that the district court erred in computing his base offense level using the drug quantity set forth in the pre-sentence report (PSR), rather than the lower amount agreed to by the government and memorialized in the plea agreement.  Second, the defendant claims that the district court erred in concluding that

two prior state convictions for distributing Xanax merited three criminal history points under the Guidelines for purposes of calculating the defendant's criminal history category.

We find no merit in Cyr's first claim of error. We further conclude that while the district court erroneously characterized the defendant's prior state convictions for distribution of heroin as "unrelated" to his prior state convictions for distribution of Xanax, its calculation of Cyr's criminal history category was nonetheless correct.

## II.

In late summer/early fall of 1998, the Drug Enforcement Administration (DEA) launched an investigation of heroin trafficking in Lawrence, Massachusetts. The investigation uncovered a drug ring run by John Damien, a former substance abuse counselor. Cyr first purchased heroin from Damien in 1995, and was arrested twice in 1996 while working as his distributor. On each occasion, the defendant was in possession of both heroin and Xanax. After the first arrest, in July 1996, Cyr was convicted on one count of possession with intent to distribute heroin and one count of possession with intent to distribute Xanax ("the July convictions"). For both offenses he received a suspended sentence of nineteen months imprisonment and was ordered to serve eighteen months probation. After the second arrest in October 1996, Cyr was again convicted of the same two offenses ("the October

convictions"). This time, Cyr was sentenced to two years of imprisonment, with 120 days served and the balance suspended. The court also sentenced the defendant to a period of probation ending February 10, 1999.

Cyr was released from prison on February 24, 1997. While still on probation, the defendant rejoined Damien's heroin organization and became his "right hand man." In this supervisory role, he was entrusted with such responsibilities as weighing and packaging the heroin, operating a "stash house," laundering the drug proceeds, and running the drug organization while Damien was away on vacation. Apprehended again in May 1999, Cyr agreed to plead guilty to the drug conspiracy and money laundering counts in the superseding indictment. Under the terms of the plea agreement, the parties "agree[d] to take the position that Defendant is responsible for not less than three (3) and not more that ten (10) kilograms of heroin during the period of the conspiracy." The plea agreement also memorialized a stipulation between Cyr and the government regarding his July and October drug convictions: "The parties agree that Defendant's convictions in the [1996] cases are part of the res gestae of this case pursuant [to] U.S.S.G. § 4A1.2, Application Note 3."[1]

---

[1]Section 4A1.1 directs courts to calculate a defendant's criminal history by assigning points for each "prior sentence" (the exact number of points assigned varies according to the nature of the particular sentence). However, Application Note 1 to § 4A1.2 specifies that

The PSR prepared for Cyr's sentencing took a contrary position with respect to both drug quantity and criminal history. In determining the drug amount attributable to Cyr, the PSR noted that Damien had admitted responsibility for 10-30 kilograms of heroin in his own plea agreement with the government. Reiterating that Cyr had acted as Damien's right hand man over the course of the conspiracy, the PSR reasoned that "the amount of heroin possessed and distributed by John Damien was reasonably foreseeable to defendant Cyr." The PSR also disregarded the parties' stipulation covering Cyr's July and October drug convictions, finding that "[t]he career offender provisions of U.S.S.G. § 4B1.1 are applicable in this case [because] the defendant has two prior convictions of either a crime of violence, or an applicable controlled substance violation."[2]

> "Prior Sentence" means a sentence imposed prior to sentencing on the instant offense, <u>other than a sentence for conduct that is part of the instant offense</u> . . . . Conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of § 1B1.3 (Relevant Conduct).

(emphasis added). Under this application note, a prior sentence deemed to be relevant conduct (i.e., part of the <u>res gestae</u> of the instant offense) is disregarded for purposes of calculating the defendant's criminal history. Accordingly, Application Note 1 seems more pertinent to the parties' stipulation than Application Note 3, which describes the circumstances under which prior sentences are "related" within the meaning of § 4A1.2(a)(2), and hence consolidated for purposes of calculating a defendant's criminal history.

[2]Under U.S.S.G. § 4B1.1, a defendant with "two prior felony convictions of . . . a controlled substance offense" qualifies as

The district court's sentencing determination incorporated elements of both the plea agreement and the PSR. Initially, the court agreed with the probation office that Cyr was responsible for a drug quantity in the 10-30 kilogram category. However, the court declined to classify Cyr's July and October heroin convictions as predicate offenses for purposes of applying the career offender guideline, reasoning that the PSR "explicitly treats the prior offenses as part of Cyr's participation in the Damien conspiracy." Having determined that Cyr did not qualify as a career offender, the court severed the July/October heroin convictions from the July/October Xanax convictions, and ruled that only the former could be considered uncountable "relevant conduct" for purposes of applying § 4A1.1. See supra note 1. The court viewed the Xanax convictions as independent offenses unrelated to the drug conspiracy charge, and accordingly assigned Cyr three criminal history points for the Xanax convictions.[3] As a result, Cyr received a total of six criminal history points, placing him in criminal history category III. On appeal, he argues that the court

_____

a career offender. Once a defendant is classified as a career criminal, he is automatically assigned to the highest criminal history category (VI). Hence a career criminal designation under § 4B1.1 supersedes the procedure for calculating criminal history delineated in § 4A1.1.

[3]The breakdown for these three points under the relevant Guidelines is discussed at length in section III.B, infra.

should only have given him three criminal history points, and correspondingly assigned him to criminal history category II.

## III.

### A. Drug Quantity

In challenging the district court's decision to attribute to him a drug quantity of 10-30 kilograms, Cyr claims that the district court erred by relying on portions of the PSR objected to by the defense without compelling the government to proffer additional evidence to bolster the disputed material. Cyr emphasizes that the Government stipulated to a drug quantity of 3-10 kilograms, and joined the defendant's objection to the PSR's higher drug quantity determination.

"Generally, a PSR bears sufficient indicia of reliability to permit the district court to rely on it at sentencing." United States v. Taylor, 277 F.3d 721, 724 (5th Cir. 2001). The defendant is free to challenge any assertions in the PSR with countervailing evidence or proffers, in which case the district court is obliged to resolve any genuine and material dispute on the merits. But if the defendant's objections to the PSR are merely rhetorical and unsupported by countervailing proof, the district court is entitled to rely on the facts in the PSR. See United States v. Grant, 114 F.3d 323, 328 (1st Cir. 1997) ("[A]lthough [defendant] objected to certain facts in the PSR . . . [he] did not provide the sentencing court with evidence to rebut the factual assertions . . . .

-7-

Consequently, the court was justified in relying on the contested facts.").

The district court's drug quantity determination was grounded in a substantial body of probative evidence gleaned both from the PSR and the plea agreement. As the court noted, the defendant conceded in the plea agreement that his managerial role in the conspiracy warranted a three-level sentencing increase pursuant to U.S.S.G. § 3B1.1(c). Having acknowledged a supervisory role, it was reasonable for the district court to attribute to him the quantity of drugs that Damien, the ringleader of the conspiracy, admitted to trafficking in his own plea agreement. As the court observed:

> Damien, the leader of the conspiracy, acknowledged in his own plea agreement that he should be held responsible for 10 to 30 kilograms. Damien's acknowledgment is not binding on Cyr, of course, but it is evidence that tends to corroborate the estimates that are based on Cyr's own statements. Further corroboration comes from another conspirator, Jose Cordero, who estimated that Damien purchased more than 10 kilograms from one particular supplier. There is no information in the statement of relevant offense conduct that tends to minimize what was foreseeable to Cyr.[4]

[4]Cyr briefly challenges the district court's use of the quantity pled to by John Damien as a benchmark for calculating his own drug quantity. He questions the reliability of Damien's plea agreement, arguing that "Damien potentially faced a sentence of life in prison if he did not accept the plea agreement from the Government, [and was] thereby induced by an 'overwhelmingly powerful' deal that burdened his right to trial by jury." The record indicates, however, that the district court's drug quantity

Perhaps the most damning evidence of drug quantity was the defendant's own admissions. Cyr's plea agreement indicates that he conceded responsibility for 3-10 kilograms during the conspiratorial period alleged in Count 1 of the indictment -- beginning "at least by or about August 1, 1997, and continuing to on or about May 20, 1999." Significantly, however, the sentencing court decided to push back the effective beginning date of the conspiracy to July 1996. This recalibration of the conspiratorial period conferred a significant benefit on Cyr because it permitted the district court to characterize his July 1996 and October 1996 heroin convictions as "relevant conduct," and therefore to disregard them for purposes of applying the career offender guideline and calculating his criminal history. See U.S.S.G. § 4A1.2, cmt. n.1. There was, however, a limited downside to this arrangement; namely, that Cyr's drug quantity calculation would now encapsulate an extra year (from July 1996 to August 1, 1997) over and above the conspiratorial period denoted in the indictment. The district court ultimately determined that this year-long extension of the conspiracy was significant for purposes of calculating Cyr's drug quantity: "If the quantitative estimates that Cyr made for one year are extrapolated to cover a conspiracy spanning two to

---

determination did not rest exclusively on Damien's plea agreement, but was corroborated by 1) statements from co-conspirator Jose Cordero, and 2) Cyr's own estimates of the drug quantity for which he was responsible.

three years, perhaps more, then it was foreseeable to Cyr that the conspiracy involved amounts in the 10 to 30 kilogram range."

We review a district court's calculation of drug quantity for clear error. United States v. Santos Batista, 239 F.3d 16, 21 (1st Cir. 2001). "[W]here there is more than one plausible view of the circumstances, the sentencing court's choice among supportable alternatives cannot be clearly erroneous." United States v. Ruiz, 905 F.2d 499, 508 (1st Cir. 1990). In the final analysis, Cyr's superficial challenges to the PSR's drug quantity determination fail to counter (or even address) the formidable array of facts and sources marshaled by the district court for its drug quantity determination. We conclude, therefore, that it was entirely proper for the district court to rely on the facts in the PSR while calculating Cyr's drug quantity, and decline to vacate Cyr's sentence on this ground.[5]

---

[5]Cyr insinuates at several points in his brief that the district court erred in relying on drug quantity estimates from Damien and Cordero without holding a separate evidentiary hearing to assess their reliability. However, as we observed in United States v. Tardiff, 969 F.2d 1283 (1st Cir. 1992):

> It is clear that a defendant is not automatically entitled to a full-blown evidentiary hearing at the time of sentencing. It is just as clear that, at a bare minimum, he who expects to receive a discretionary dispensation must first seek it. Thus, the failure to ask the district court to convene an evidentiary hearing ordinarily spells defeat for a contention that one should have been held.

Id. at 1286. Cyr's failure to seek an evidentiary hearing below dooms any argument on appeal that the district court abused its

-10-

## B. Criminal History

The district court adopted the PSR's recommendation that Cyr receive one criminal history point for each of three prior convictions unrelated to the subject matter of this appeal, noting that "[t]he PSR uncontroversially assigned one criminal history point for the prior convictions in ¶¶ 91, 93, and 98." These paragraphs in the PSR refer, respectively, to 1) a conviction for possession of heroin on October 16, 1989, 2) a conviction for shoplifting on April 12, 1995, and 3) a conviction for shoplifting and filing a false report to law enforcement on December 22, 1998. Cyr does not challenge these points on appeal. The court then assigned Cyr two points pursuant to U.S.S.G. § 4A1.1(d) for committing the instant offense while serving a term of probation for his October Xanax conviction. Finally, the court intended to assign the defendant another two points under U.S.S.G. § 4A1.1(c). This section directs courts to assign one criminal history point for each prior sentence of less than sixty days. However, the total number of points that can be assigned under § 4A1.1(c) is capped at four. The district court had already counted three prior sentences under this section by the time it reached Cyr's Xanax sentences. Accordingly, it could only assign a total of one point

---

discretion in foregoing such a hearing during his sentencing.

-11-

under this section for both Xanax offenses.  Ultimately, the point

breakdown for Cyr's criminal history category was as follows:

<u>Criminal History Points</u>

| | | |
|---|---|---|
| | 3 | Three prior convictions of less than 60 days [U.S.S.G. § 4A1.1(c)] |
| (Xanax-related) | +2 | Commission of the instant offense while serving probation from the October Xanax conviction [U.S.S.G. § 4A1.1(d)] |
| (Xanax-related) | +1 | Prior Xanax convictions of less than 60 days [U.S.S.G. § 4A1.1(c)] |
| | Total = 6 | |

On appeal, Cyr asserts that the district court

erroneously assigned him three criminal history points for his

prior Xanax convictions, resulting in a criminal history category

of III.  The court's decision to assign these points for Cyr's

Xanax sentences reflected its understanding that the state Xanax

convictions, unlike the state heroin convictions, were "irrelevant"

to the instant heroin conspiracy.  <u>See</u> <u>supra</u> note 1.  Cyr responds

with the creative theory that if his 1996 heroin convictions were

uncountable as criminal history by virtue of being "relevant

conduct" to the instant offense, other prior sentences "related" to

those heroin convictions must be considered relevant conduct as

well.  To restate his proposition more broadly, a court confronted

with a group of prior related sentences must designate them

relevant or irrelevant conduct as a group.  If Cyr is correct, his

Xanax convictions are uncountable under §4A1.2, and therefore

-12-

provide no basis for either a two-point assessment under § 4A1.1(d) or a one-point assessment under § 4A1.1(c).

In its sentencing memorandum, the court attempted to reconcile its assignment of criminal history points for the Xanax sentences with its earlier determination that Cyr's contemporaneous July/October heroin sentences were uncountable relevant conduct:

> The question thus arises whether the Xanax convictions, countable if they stood alone, should be regarded as uncountable because they were imposed concurrently with uncountable heroin offenses. Cyr argued that the convictions that occurred the same day (as did the offenses) ought to be considered "related" to each other, see U.S.S.G. § 4A1.2(a)(2) and n.3, and that therefore, if the heroin convictions are treated as uncountable, the "related" Xanax convictions ought also be considered uncountable.
>
> I conclude that the prior Xanax convictions should not be deemed "related," despite their apparent fit within the explanation set out in application note 3 to § 4A1.2(a)(2), because in this case the heroin offenses were part of the relevant conduct for the instant crime of conviction -- conspiracy to distribute heroin -- while the Xanax convictions were not.

This conclusion -- that heroin and Xanax offenses committed, charged, and resolved contemporaneously are not "related" to each other -- cannot be squared with the language of Application Note 3 to § 4A1.2: "[P]rior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or

-13-

(C) were consolidated for trial or sentencing." U.S.S.G. § 4A1.2, cmt. n.3.

However, even if Cyr's July heroin conviction is "related" to his July Xanax conviction (and Cyr's two October convictions are similarly related), it does not follow that all four prior sentences were necessarily for conduct relevant to the instant offense. Under the Guidelines, the significance of a "relatedness" finding is simply that "[p]rior sentences imposed in related case are to be treated as one sentence" for purposes of calculating the defendant's criminal history. U.S.S.G. § 4A1.2(a)(2).

Cyr points to no Guideline language or case law that compels a court to brand all prior related sentences "relevant conduct" if a single sentence in the group is deemed to encompass such conduct. Applying the broad definition of "relatedness" in Application Note 3 to § 4A1.2, it is easy to imagine that two offenses "consolidated for trial or sentencing" may govern conduct that is sufficiently dissimilar in nature or scope as to preclude a uniform "relevant conduct" determination. Under the Guidelines, the glue that binds prior sentences together under Application Note 3 may be different from the substantive similarities that render prior conduct "relevant" to an instant offense. In this case, Cyr's July Xanax and heroin sentences are <u>related</u> because (1) the offenses occurred on the same occasion, and (2) the cases were

consolidated for trial.  The same logic applies to the October sentences.  But it was not improper for the district court to nonetheless conclude that only the prior heroin offenses were <u>relevant</u> to the instant heroin conspiracy, while the prior Xanax offenses were not.  Accordingly, we find no error in the district court's assignment of three criminal history points for Cyr's prior Xanax sentences.

**Affirmed.**