# United States Court of Appeals
## For the First Circuit

No. 21-1916

UNITED STATES OF AMERICA,

Appellee,

v.

ERICK DE JESÚS-TORRES,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Barron, Chief Judge,
Selya and Kayatta, Circuit Judges.

Raúl S. Mariani Franco on brief for appellant.
W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Gregory B. Conner, Assistant United States Attorney, on brief for appellee.

March 31, 2023

**SELYA**, **Circuit Judge**.    Uber is a ride-hail company, through which prospective riders summon drivers electronically (by means of a specially designed app).    Defendant-appellant Erick De Jesús-Torres and his two accomplices devised a way to use the Uber app as a latchkey to open the doors for serial carjackings.    After these antics came to an inglorious end, the defendant entered a guilty plea to a number of charges and was sentenced to serve a seventy-eight-month prison sentence.    In this appeal, he challenges both his sentence and the concomitant restitution order.    After careful consideration, we reject his claims of sentencing error.    As to the restitution order, we find merit in one — but only one — of his claims.    Consequently, we affirm the defendant's sentence; direct modification of the restitution order as specified herein; and affirm the modified restitution order.

**I**

We briefly rehearse the relevant facts and travel of the case.    Where, as here, a sentencing appeal follows a guilty plea, "we draw the facts from the non-binding plea agreement . . . , the change-of-plea colloquy, the undisputed portions of the [amended] presentence investigation report (PSI Report), and the transcript of the disposition hearing."    United States v. Bermúdez-Meléndez, 827 F.3d 160, 162 (1st Cir. 2016).

**A**

This case arises from a carjacking spree that occurred during a time frame that extended from late 2019 into early 2020. The first three carjackings (which took place on December 20, December 23, and December 31) each followed the same pattern: the defendant and his two accomplices requested an Uber; when the Uber arrived, the defendant sat in the front passenger seat and the accomplices sat in the back seat; upon reaching their designated destination, the defendant switched off the ignition; one of the accomplices ordered the driver out of the vehicle; and once the driver had complied, the trio drove the vehicle away. In each instance, one of the accomplices brandished a pellet gun. These three carjackings went according to plan.

The carjackers, however, came a cropper on their fourth try. During the evening of January 2, the Uber driver who had responded to their request refused to exit the vehicle when the defendant's accomplice pointed the pellet gun at her. She continued to balk despite being struck several times. Exasperated, the three miscreants robbed the driver but fled without the vehicle once the driver began sounding the horn.

The carjackers' work on that evening was not done. They repaired to a nearby bowling alley, where an acquaintance requested another Uber for them. Employing their signature method, the trio

carjacked that vehicle. Later that same evening, they carjacked yet another Uber.

The carjackers' spree ended the next morning (around 12:30 a.m.), when an off-duty police officer — with the assistance of the Uber driver who had refused to capitulate to the carjackers — apprehended them. What happened next is disputed. According to the amended PSI Report,[1] the off-duty officer seized the defendant and, during the ensuing scuffle, the defendant "grabbed [the officer]'s firearm, which fired a round that struck [the defendant] in his torso." The defendant, however, claimed that he had no way of knowing that the man wielding a firearm was a police officer. He also claimed that the man shot him in the back as he fled. In any event, the defendant was arrested soon after the shooting.

**B**

As relevant here, a federal grand jury sitting in the District of Puerto Rico returned a superseding indictment charging the defendant with five counts of carjacking and one count of attempted carjacking. See 18 U.S.C. § 2119. The defendant pleaded guilty to all six counts pursuant to a plea agreement that forecast a total offense level (TOL) of twenty-four but left open the

---

[1] For present purposes, the amended PSI Report is the operative version of the presentence investigation report. Although the probation office later filed a second amended PSI Report, that report is identical to the amended PSI Report except for the presence of an addendum (which we have duly considered).

- 4 -

defendant's criminal history category (CHC). Both sides agreed to recommend a sentence at the lower end of the guideline sentencing range (GSR) to be determined by the district court.

In the first iteration of the PSI Report, the probation office calculated a TOL of thirty, noting that the plea-agreement calculation had not taken into account, among other things, applicable enhancements for bodily injury and the use of a dangerous weapon. See USSG §2B3.1(b)(2)(D), (b)(3)(A). The report also provided a restitution recommendation, which included — as expense items incident to the carjackings — the cost of replacing a cellphone belonging to one of the victims ($1,170.74), the cost of auto-body work for damage to a carjacked vehicle ($4,209.77), and the cost of transmission repairs to the same vehicle ($3,914.52). The probation office based these loss calculations on receipts for the cellphone and transmission repairs, an estimate for the body work, and a victim-impact statement.

The defendant interposed several objections to the PSI Report (objections which, as we discuss below, were untimely). In response, the probation office filed an amended PSI Report. The probation office did not change the restitution calculations, but the probation office sent defense counsel copies of receipts for some cost items and a copy of the estimate for the auto-body work. Moreover, the amended PSI Report deleted the proposed bodily injury enhancement but retained the recommended dangerous weapon

- 5 -

enhancement, resulting in a TOL of twenty-eight. That TOL, coupled with the defendant's placement in CHC I, yielded a GSR of seventy-eight to ninety-seven months.

The district court convened the disposition hearing on October 18, 2021. Both sides argued for a fifty-one-month incarcerative sentence (based on the plea agreement and the defendant's mitigating circumstances, including the fact that he had just turned eighteen at the time of the carjacking spree). The district court demurred. It adopted the guideline calculations limned in the amended PSI Report. Then, the court found that the parties' recommended sentence did not "reflect the seriousness of the offenses, . . . promote respect for the law, . . . protect the public from . . . additional crimes by Mr. De Jesus, [or] address the issues of deterrence and punishment," particularly considering the "violent nature of the six carjacking crimes in which victims were led to believe that their life was threatened by a firearm." Having laid this foundation, the court proceeded to impose a within-the-range term of immurement of seventy-eight months. Finally, the court adopted the amended PSI Report's restitution calculations and ordered the defendant to pay $9,295.03 in restitution (comprising the aggregate cost of a new cellphone, the auto-body work, and the transmission repairs).

The defendant unsuccessfully sought reconsideration of both the sentence and the restitution award. This timely appeal followed.

**II**

The defendant argues that his sentence is both procedurally infirm and substantively unreasonable. In addition, he argues that the restitution order is lacking in evidentiary support.

Our "review of a criminal defendant's claims of sentencing error involves a two-step pavane." United States v. Miranda-Díaz, 942 F.3d 33, 39 (1st Cir. 2019). Under this framework, "we first determine whether the sentence imposed is procedurally reasonable and then determine whether it is substantively reasonable." United States v. Clogston, 662 F.3d 588, 590 (1st Cir. 2011). At both steps of this pavane, "our review of preserved claims of error is for abuse of discretion." United States v. Díaz-Lugo, 963 F.3d 145, 151 (1st Cir. 2020). Within the abuse of discretion rubric, we review findings of fact for clear error and questions of law de novo. See United States v. Carrasquillo-Vilches, 33 F.4th 36, 41 (1st Cir. 2022).

Against this backdrop, we turn first to the defendant's claims of sentencing error. Restitution is a separate matter — and we discuss it separately. See infra Part II(D). That discussion incorporates the applicable standards of review.

- 7 -

**A**

There is a threshold question as to the timeliness of the defendant's objections to the amended PSI Report's version of the relevant events. We start there.

Under Federal Rule of Criminal Procedure 32(f)(1), a defendant has fourteen days to object to inaccuracies in a presentence investigation report.[2] Here, the defendant's objections were not submitted until twenty-four days after the PSI Report issued. Typically, an untimely objection would work a forfeiture, limiting the objecting party to plain error review. See United States v. Carbajal-Váldez, 874 F.3d 778, 783 (1st Cir. 2017). But when — as in this case — neither the government nor the district court questioned the timeliness of belated objections to a presentence investigation report, "a colorable argument can be made that the objections sufficed to preserve the claim of error." Id. Thus, we assume — favorably to the defendant — that his objections to the PSI Report were preserved.

**B**

The defendant's claim of procedural error is bound up in his contention that the district court erred by relying on disputed facts within the amended PSI Report regarding his struggle with

---

[2] This fourteen-day period is mirrored in a local rule promulgated by the United States District Court for the District of Puerto Rico. See D.P.R. Crim. R. 132(b)(3)(A).

the off-duty police officer. When a fact in the PSI Report is disputed, a district court must resolve the dispute so long as the fact may affect the court's sentencing determinations. See Fed. R. Crim. P. 32(i)(3)(B). In such an event, we ordinarily would review the district court's finding on the disputed fact for clear error. See Carbajal-Váldez, 874 F.3d at 783.

The case at hand, though, does not fit that mold. When the defendant objected during the disposition hearing to the amended PSI Report's description of his interaction with the off-duty police officer (urging that the district court "should not give any weight to those facts"), the court responded that it had not considered the encounter for sentencing purposes. We have no reason to doubt that the district court meant what it said, and its statement disposes of any need for us to resolve the defendant's claim of error. We have held before — and today reaffirm — that when a sentencing court determines that a disputed fact will not be considered for sentencing purposes, a ruling on that disputed fact becomes unnecessary. See United States v. Pinet-Fuentes, 888 F.3d 557, 560 (1st Cir. 2018); see also Fed. R. Crim. P. 32(i)(3)(B).

To be sure, the district court — earlier in the disposition hearing — mentioned the defendant's encounter with the off-duty police officer. But we conclude that the district court's later disavowal of any reliance on the disputed encounter was

sufficient to render the defendant's claim of procedural error moot. When a sentencing court specifically disavows any reliance on a particular circumstance, a reviewing court should give credence to that disavowal absent some contradictory indication in the record. See, e.g., United States v. García-Mojica, 955 F.3d 187, 194 (1st Cir. 2020) (rejecting claim of procedural error when district court "expressly disavowed any reliance on facts" not properly before it); cf. United States v. Londono-Quintero, 289 F.3d 147, 155 (1st Cir. 2002) (giving credence to district court's disavowal of any reliance on police report when it made aggravated-felony determination). There is no such contradictory indication in the record here.

## C

We next turn to the defendant's contention that his sentence is substantively unreasonable. Our review is for abuse of discretion. See Holguin-Hernandez v. United States, 140 S. Ct. 762, 766 (2020); Carrasquillo-Vilches, 33 F.4th at 44.

When evaluating the substantive reasonableness of a challenged sentence, "the key inquiry is whether the sentencing court has articulated a plausible rationale and reached a defensible result." United States v. Coombs, 857 F.3d 439, 452 (1st Cir. 2017). In undertaking this inquiry, we remain mindful that "reasonableness is a protean concept." United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008). "There is no one

- 10 -

reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes." Clogston, 662 F.3d at 592.

In this instance, the district court adopted the guideline calculations recommended in the amended PSI Report (including the recommended GSR). On appeal, the defendant has not mounted any viable challenge to the GSR. Where, as here, a sentence is within a properly calculated guideline range, challenging its substantive reasonableness involves a "heavy lift." United States v. Cortés-Medina, 819 F.3d 566, 572 (1st Cir. 2016).

**1**

The defendant strives to persuade us that he can make this heavy lift. He first suggests that, although the dangerous weapon enhancement may literally apply, its application here — in circumstances in which the pellet gun was neither procured by him nor wielded by him — is not aligned with the Sentencing Commission's intent. In support, the defendant cites the Supreme Court's decision in Kimbrough v. United States, 552 U.S. 85 (2007).

Fairly read, Kimbrough is of little help to the defendant. We have described Kimbrough as holding that "district courts have discretion to vary downwardly from a sentence on the basis of a policy disagreement with the relevant guideline." United States v. Lewis, 963 F.3d 16, 26 (1st Cir. 2020) (citing Kimbrough, 552 U.S. at 109-10). Taking this description into

account, we find the defendant's Kimbrough-based contention unconvincing. When he raised this objection below, the district court overruled it. The court found that the facts adumbrated in the amended PSI Report brought this case squarely within the purport of the enhancement. It noted that although the defendant's accomplices held the pellet gun, the guidelines for aiding and abetting the use of a dangerous weapon made the defendant equally responsible for its deployment. See USSG §1B1.3(a)(1)(A).

The district court's logic seems unassailable. In determining that the dangerous weapon enhancement should apply equally to those who aid and abet the use of a dangerous weapon, the Sentencing Commission took aim at the precise type of conduct that the defendant now seeks to place on the outer periphery of the enhancement.

We add, moreover, that Kimbrough does not require a downward variance every time a defendant can articulate a colorable policy disagreement with a guideline provision. See Clogston, 662 F.3d at 592 (observing that "the discretion to vary under Kimbrough is not tantamount to an obligation to do so"); United States v. Rodríguez, 527 F.3d 221, 231 (1st Cir. 2008) (noting that although sentencing court may consider a Kimbrough-related argument, it is "not obligated to deviate from the guidelines based on" that argument). Although the Kimbrough Court affirmed a sentencing court's discretion to vary downward in response to policy

arguments, "the mere fact that a sentencing court has the discretion to disagree with the guidelines on policy grounds . . . does not mean that it is required to do so." United States v. Ekasala, 596 F.3d 74, 76 (1st Cir. 2010). Consequently, we reject the defendant's suggestion that a downward variance was necessary here.

**2**

The defendant also attacks the substantive reasonableness of his sentence from a different angle. He complains that the district court did not give adequate weight to certain mitigating factors that, in his view, warranted a lower sentence. He specifically notes his youth at the time of the carjackings, the years he spent in the foster care system, his first-time-offender status, and his lack of any involvement with controlled substances.

Even so, the district court did not overlook these factors. The court commented specifically that it had considered the defendant's "age, mental health condition, mental disability, first time offender status, and his allocution." But the court weighed these mitigating factors against "the violent nature of the six carjacking crimes in which victims were led to believe that their life was threatened by a firearm." Based on its analysis, the court struck a different balance than the parties had reached in the plea agreement: to the court's way of thinking,

the proposed fifty-one-month sentence failed to "reflect the seriousness of the offenses."

When all is said and done, this aspect of the defendant's challenge rests mainly on the district court's alleged failure to weigh certain mitigating factors as heavily as the defendant would have preferred. But the mere fact "[t]hat the sentencing court chose not to attach to certain of the mitigating factors the significance that the [defendant] thinks they deserved does not make the sentence unreasonable." Clogston, 662 F.3d at 593.

Of course, the district court's sentencing rationale is not a textbook model. Much of it is boilerplate — and we have twice remarked on its flaws in recent opinions. See United States v. Flores-Nater, __ F.4th __, __ (1st Cir. 2023) [Nos. 21-1856, 21-1979, slip op. at 8] (concluding that similar, non-case-specific language "scarcely constitutes a plausible rationale sufficient to justify a steep upward variance"); United States v. Muñoz-Fontanez, 61 F.4th 212, 214-15 (1st Cir. 2023) (concluding that similar, non-case-specific language was inadequate to explain upward variance). Here, however, there are two notable differences. First, the court went beyond the boilerplate to single out a case-specific aggravating factor: it commented specifically on the especially violent nature of the offenses of conviction. See Flores-Nater, __ F.4th at __ [slip op. at 9] (explaining that "a sentencing court's rationale need not always

- 14 -

be explicit" but, in some instances, that "rationale may be teased from the sentencing record").  Second, the sentence was within the GSR and, as such, the burden of explanation was considerably diminished.  See United States v. Montero-Montero, 817 F.3d 35, 37 (1st Cir. 2016).  After all, "when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation."  Rita v. United States, 551 U.S. 338, 356-57 (2007).  Given this low bar, we deem the district court's rationale to be both plausible and sufficient to support the defendant's sentence.

Nor is the sentencing outcome in this case an outlier. In virtually all cases, a within-guidelines sentence will be a defensible outcome.  See United States v. Torres-Landrúa, 783 F.3d 58, 69 (1st Cir. 2015) (concluding that sentence "at the very bottom" of applicable GSR "was within the universe of reasonable outcomes and, thus, defensible"); cf. United States v. Turbides-Leonardo, 468 F.3d 34, 41 (1st Cir. 2006) ("It will be the rare case in which a within-the-range sentence can be found to transgress the parsimony principle.").  This case falls within the sweep of that general rule, not within the long-odds exception to it.  It follows that a bottom-of-the-range sentence — such as the sentence that the defendant challenges in this case — represents a defensible outcome.

- 15 -

We add a coda. Though advisory, the sentencing guidelines are "the initial benchmark" from which to make an individualized assessment. Gall v. United States, 552 U.S. 38, 49-50 (2007). That the court declined to vary below the guideline range is not an abuse of discretion and does not render the defendant's sentence substantively unreasonable. See Clogston, 662 F.3d at 593.

**D**

This leaves the defendant's challenge to the restitution order. Under the Mandatory Victims Restitution Act (MVRA), defendants convicted of certain federal crimes — such as carjacking — must make victims whole for their actual losses. See 18 U.S.C. § 3663A. For this purpose, the MVRA limits a victim's "actual loss" to the "pecuniary harm that would not have occurred but for the defendant's criminal activity." Carrasquillo-Vilches, 33 F.4th at 45 (quoting United States v. Simon, 12 F.4th 1, 64 (1st Cir. 2021)); see 18 U.S.C. § 3663A(b)(1)(B).

Before us, the defendant attempts to challenge the restitution order as to all three of its component parts (the cost of a new cellphone, the cost of the auto-body work, and the cost of the transmission repairs). But he has bitten off more than he can chew. We have said that "[w]aiver typically occurs when a party intentionally relinquishes a known right," United States v. Alphas, 785 F.3d 775, 784 (1st Cir. 2015), and at the disposition

- 16 -

hearing, the defendant expressly abandoned his previous objections to the restitution order in so far as those objections concerned compensation for replacement of the stolen cellphone and for the auto-body work. His claims of error with respect to those portions of the restitution order are, therefore, waived. See United States v. Orsini, 907 F.3d 115, 119-20 (1st Cir. 2018); Alphas, 785 F.3d at 784.

The issue narrows, then, to the defendant's challenge to that part of the restitution order dealing with reimbursement for transmission repairs (totaling $3,914.52). "We review restitution orders for abuse of discretion, examining the court's subsidiary factual findings for clear error and its answers to abstract legal questions de novo." United States v. Chiaradio, 684 F.3d 265, 283 (1st Cir. 2012). The government bears "the burden of demonstrating a proximate, but-for causal nexus between the offense of conviction and the actual loss." United States v. Padilla-Galarza, 990 F.3d 60, 92 (1st Cir. 2021). It must carry this burden by a preponderance of the evidence. See 18 U.S.C. § 3664(e). "This standard is relatively modest in application, as 'a modicum of reliable evidence' may suffice both to establish the requisite causal connection and to justify a dollar amount." Padilla-Galarza, 990 F.3d at 92 (quoting United States v. Flete-Garcia, 925 F.3d 17, 37 (1st Cir. 2019)).

Such reliable evidence can be derived from a presentence investigation report, which "generally bears 'sufficient indicia of reliability to permit the district court to rely on it at sentencing.'" United States v. Prochner, 417 F.3d 54, 65-66 (1st Cir. 2005) (quoting United States v. Cyr, 337 F.3d 96, 100 (1st Cir. 2003)). A defendant may object to the PSI Report's restitution figure, but if the objections "are merely rhetorical and unsupported by countervailing proof, the district court is entitled to rely on the facts in the [PSI Report]." Id. at 66 (quoting Cyr, 337 F.3d at 100).

In the case at hand, the defendant asserts that the district court awarded restitution for the transmission repairs notwithstanding the absence of any evidence showing either the cost of the transmission repairs or a causal connection between those repairs and the carjacking. As to the repair cost, his claim is baseless. The repair cost ($3,914.52) was specified in the amended PSI Report and (corroborated by a receipt furnished to defense counsel).[3] Without any contradictory factual showing, it was within the district court's discretion to rely on the repair-cost figure displayed in the amended PSI Report. See United States v. Sánchez-Maldonado, 737 F.3d 826, 828 n.2 (1st Cir. 2013)

---

[3] Although a copy of the receipt is not contained in the sentencing record, defense counsel has not denied either that he received the receipt or that the receipt was in the amount that the sentencing court awarded.

(explaining — in restitution context — that "an uncontradicted loss amount does not give rise to a dispute"); Prochner, 417 F.3d at 66 ("In the absence of rebuttal evidence beyond defendant's self-serving words, we cannot say the court clearly erred in accepting the [PSI Report's] calculation of the restitution amount.").

But there is a fly in the ointment. To recover any item of loss, the government must show a causal connection between the offense of conviction and that item. See Padilla-Galarza, 990 F.3d at 92. Here, however, the record is barren of any smidgen of evidence indicating a causal connection between the carjacking and the transmission damage. The amended PSI Report does not speak to causation at all, and there is not even a statement from the victim to that effect in the record.[4] What is more, the district court did not identify any factual basis sufficient to support a finding of causation. Causation cannot simply be assumed and — in light of this evidentiary void — the portion of the restitution award

---

[4] The victim-impact statement that mentions the transmission repairs is not part of the district court record and — for aught that appears — was never reviewed by the district court. In an abundance of caution, we have tracked down that statement and have learned that it was part of the probation office's file. But it is a Spanish-language document, which was never translated into English. Reliance on it in a federal court proceeding is therefore proscribed. See 48 U.S.C. § 864; see also United States v. Román-Huertas, 848 F.3d 72, 76 n.4 (1st Cir. 2017) ("The Jones Act applies with equal force to any material that a probation officer wants the district court to consider at sentencing.").

relating to transmission repairs ($3,914.52) cannot stand.  On remand, therefore, the district court must modify the restitution order by subtracting $3,914.52, resulting in a modified award of $5,380.51.

### III

We need go no further.  For the reasons elucidated above, we affirm the defendant's sentence; direct modification of the restitution order as specified herein; and affirm the modified restitution order.

**<u>So Ordered</u>**.