# United States Court of Appeals
## For the First Circuit

No. 15-2120

UNITED STATES OF AMERICA,

Appellee,

v.

JUAN FRANCISCO EMILIO CARBAJAL-VÁLDEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Lynch, Selya and Stahl,
Circuit Judges.

Daniel N. Marx, Foley Hoag LLP, and Fick & Marx LLP on brief for appellant.

Rosa Emilia Rodríguez-Vélez, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Mainon A. Schwartz, Assistant United States Attorney, on brief for appellee.

November 3, 2017

**SELYA**, **Circuit Judge**. In this appeal, defendant-appellant Juan Francisco Emilio Carbajal-Váldez advances two claims of error. First, he contends that the district court erred in imposing a sentencing enhancement based largely on his admission that he captained the cocaine-laden boat used in the smuggling attempt. Second, he contends that the government breached a plea agreement between the parties both in responding to the district court about the prospective enhancement and in supporting the resultant sentence on appeal. Concluding, as we do, that these contentions are unpersuasive, we affirm.

## I. BACKGROUND

Because this appeal follows a guilty plea, "we draw the facts from the plea colloquy, the uncontested portions of the presentence investigation report, and the sentencing transcript." United States v. Nuñez, 852 F.3d 141, 143 (1st Cir. 2017). After accepting an offer of $50,000 to transport drugs from Venezuela to Puerto Rico, the appellant embarked on an ill-fated voyage with two fellow seamen and a large quantity of cocaine. Just before midnight on March 16, 2015, a Puerto Rico Police Department maritime patrol boat spied their vessel operating without navigation lights off the coast of Puerto Rico. When the police stopped the vessel and boarded it, they saw a number of sacks containing white brick-shaped objects in plain view. A field test, conducted while at sea, revealed these bricks to be cocaine. In

- 2 -

total, the police recovered approximately 1,434 kilograms of cocaine.

The police seized the boat and arrested the three men on board: the appellant, José Miguel Váldez-Vázquez, and Ramón Pache. The government alleges (and the appellant does not dispute) that at the moment of interdiction, the appellant identified himself as the captain of the craft.

The authorities proceeded to file criminal complaints against all three seafarers, charging that they possessed and conspired to possess with intent to distribute five kilograms or more of cocaine. See 21 U.S.C. §§ 841(a)(1), 846. In short order, a federal grand jury indicted the trio on the same charges. At first, the appellant resisted the indictment, maintaining his innocence. His codefendants adopted a similar stance.

After defense counsel met with the prosecutor and obtained discovery, the appellant and his codefendants decided to change their pleas and entered into substantially identical plea agreements with the government. During a joint change-of-plea hearing, each man pleaded guilty to a single count of conspiring to possess five or more kilograms of cocaine with intent to distribute. The appellant's plea agreement (the Agreement) contemplated a base offense level of 38, premised largely on drug quantity. It also contemplated a three-level reduction for acceptance of responsibility, see USSG §3E1.1(a), and left open

the possibility of a further two-level reduction if the appellant proved to satisfy the requirements for the so-called safety valve, see id. §2D1.1(b)(17).  Both sides pledged not to seek any further adjustments or departures, up or down.

The Agreement took no position as to the appropriate criminal history category and, thus, did not forecast a specific guideline sentencing range.  The government, though, agreed that when the guideline range was established, it would recommend a within-the-range sentence.  The Agreement made pellucid that any such recommendation would not be binding on the sentencing court.

Once the district court had accepted all three guilty pleas, the probation office prepared a separate presentence investigation report (PSI Report) for each defendant.  When those reports were compiled, the probation office recommended a sentencing enhancement for the appellant that it did not recommend for either of his codefendants: a two-level enhancement as captain of the boat under USSG §2D1.1(b)(3)(C).  This enhancement was appropriate, the probation office stated, because the appellant had been identified as the master of the vessel and had admitted to the probation officer that his job had been to get the boat, bring it to the loading port, and "steer the vessel and transport the drugs to [Puerto Rico]."

Neither the appellant nor the government objected in writing to any of the findings or recommendations contained in the

- 4 -

PSI Report. At the disposition hearing, the district court — rejecting the exhortations of both the appellant and the government — adopted the guideline calculations limned in the PSI Report. These calculations included the captain enhancement, which ratcheted up the appellant's adjusted offense level and produced a higher guideline range. The court then imposed a 168-month term of immurement.[1]

Earlier the same day, the district court held separate sentencing hearings for each of the appellant's codefendants. The court did not tag either of them with the captain enhancement. In the absence of that enhancement, the court sentenced each man to 135 months' imprisonment.

This timely appeal ensued. The waiver-of-appeal clause contained in the Agreement offers no impediment: that clause is contingent upon the district court imposing a sentence within the sentence recommendation provisions of the Agreement, and the appellant's sentence — increased by the captain enhancement — did not trigger that contingency.

---

[1] The guideline sentencing range recommended by the probation office (168-210 months) included offense-level reductions for both acceptance of responsibility and the safety valve. The sentence imposed by the district court was at the bottom of this range. Had the court not applied the enhancement, the guideline range would have been 135-168 months.

## II.  ANALYSIS

Generally speaking, appellate review of a federal criminal sentence is imbued with a "frank recognition of the substantial discretion vested in a sentencing court." United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013). More specifically, though, such review is bifurcated: a reviewing court must first determine whether a challenged sentence is procedurally sound and then must determine whether it is substantively reasonable. See United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015). In evaluating the procedural integrity of a sentence, we afford de novo review to the district court's interpretation and application of the sentencing guidelines, appraise its factfinding for clear error, and evaluate its judgment calls under an abuse-of-discretion rubric. See id.

The usual standards of appellate review are altered when a party fails to preserve claims of sentencing error in the district court. In that event, appellate review is solely for plain error. See United States v. Rodríguez-Milián, 820 F.3d 26, 34 (1st Cir.), cert. denied, 137 S. Ct. 138 (2016). This rigorous standard requires an appellant to show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial

proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

Against this backdrop, we turn to the case at hand. The appellant presses two separate claims of procedural error. We address them sequentially.

### A. Imposition of the Enhancement.

The appellant's principal challenge is to the district court's imposition of the captain enhancement under USSG §2D1.1(b)(3)(C). This challenge takes dead aim at the factual finding that the appellant acted as the captain of the cocaine-laden ship. One problem, however, is that the PSI Report contained such a finding and recommended the concomitant enhancement, but the appellant did not seasonably object to these statements. Such an omission normally would constitute a waiver or, at least, a forfeiture, thus paving the way for plain error review. See United States v. Turbides-Leonardo, 468 F.3d 34, 38 (1st Cir. 2006); see also Fed. R. Crim. P. 32(f) (requiring objections to presentence report within 14 days); D.P.R.R. 132(b)(3)(A) (similar).

Here, however, there is a potentially countervailing consideration. At the disposition hearing, defense counsel disputed both the effect of the appellant's characterization of himself as the captain and the application of the enhancement. Neither the government nor the district court questioned the timeliness of these objections, and a colorable argument can be

- 7 -

made that the objections sufficed to preserve the claim of error. See, e.g., United States v. Perkins, 89 F.3d 303, 306-07 (6th Cir. 1996).

In all events, courts should not rush to untangle knotty legal questions when there is no real need to do so. So it is here: because the standard of review is not decisive with respect to this issue, we assume, favorably to the appellant, that his objections were preserved.

The claim of error turns, of course, on the supportability of the sentencing court's factual finding. That finding is reviewed for clear error. See Ruiz-Huertas, 792 F.3d at 226. Clear error is not an appellant-friendly standard; it is "satisfied only if, 'upon whole-record-review, an inquiring court form[s] a strong, unyielding belief that a mistake has been made.'" Nuñez, 852 F.3d at 144 (alteration in original) (quoting United States v. Cintrón-Echautegui, 604 F.3d 1, 6 (1st Cir. 2010)). The government bears the burden of proving sentence-enhancing factors by a preponderance of the evidence. See id. Raw facts contained in unchallenged portions of a presentence report are ordinarily "considered reliable evidence for sentencing purposes." United States v. Morrillo, 8 F.3d 864, 872 (1st Cir. 1993); see United States v. Fernandez-Cabrera, 625 F.3d 48, 54 (1st Cir. 2010); United States v. Garcia, 954 F.2d 12, 18 (1st Cir. 1992).

Here, the sentencing court found that the captain enhancement applied. The court, though, did not spell out its subsidiary findings. Such inattention to subsidiary findings invites confusion. The better practice is for a sentencing court to make reasonably specific findings as to why an enhancement is appropriate. See, e.g., United States v. McDowell, 918 F.2d 1004, 1012 (1st Cir. 1990).

Nevertheless, we are reluctant to exalt form over substance. Notwithstanding our preference for explicit findings, we have recognized that the absence of such findings is not always fatal. See United States v. Van, 87 F.3d 1, 3 (1st Cir. 1996). A reviewing court may uphold a sentencing court's conclusion if it seems apparent that the sentencing court adopted, albeit implicitly, relevant findings contained in a presentence investigation report and those findings provide a sufficient basis for the conclusion. See United States v. Schultz, 970 F.2d 960, 963 n.7 (1st Cir. 1992); McDowell, 918 F.2d at 1011-12. The key is whether the sentencing record, taken as a whole, reliably shows that the relevant factual questions were "implicitly resolved" by the sentencing court. Van, 87 F.3d at 3.

In the case at hand, the district court stated at the disposition hearing that it agreed with the probation officer concerning the enhancement. This statement, coupled with the court's explanation that the captain enhancement was applied

because the appellant "acted as the captain aboard the vessel which carried controlled substances," makes manifest that the court impliedly adopted the findings contained in the PSI Report. Consequently, the question reduces to the sufficiency of those findings.

The PSI Report, fairly read, offers enough information to eliminate any guesswork about what facts the sentencing court envisioned as the basis for the captain enhancement. To begin, the PSI Report captures the appellant's admission that it was his role to procure the boat in Maracaibo, Venezuela, and take it to another port (where the drugs were brought on board). He then received instructions to undertake the voyage to Piñones, Puerto Rico. During that voyage, he steered the vessel (although at least one of his codefendants helped with the steering). We think that these facts justified the sentencing court's decision to apply the enhancement to this defendant and not to his codefendants.

To cinch the matter, defense counsel acknowledged during the disposition hearing that, at the time of interdiction, the appellant admitted that he was the captain. Counsel indicated that he had confirmed the veracity of this admission with the appellant. Consistent with this self-identification, the PSI Report denominated the appellant as the "master of the vessel." That designation, in turn, became part of the predicate that undergirded the captain enhancement.

Faced with these data points, the appellant never denied that he had identified himself as the captain. Instead, he argued in the district court that "the title doesn't make . . . the description of the specifics of this case." Before us, the appellant makes essentially the same argument, suggesting that the captain enhancement should not depend on the title alone, but on the functions that he performed. Although this suggestion possesses a patina of plausibility, it fails on the facts.

The sentencing guidelines do not define the word "captain." Since undefined terms in the guidelines should customarily be given their plain and ordinary meaning, see Chapman v. United States, 500 U.S. 453, 461-62 (1991); United States v. Brewster, 1 F.3d 51, 54 (1st Cir. 1993), the sentencing court was entitled to give the appellant's "captaincy" admission some weight. Here, moreover, the appellant's self-identification, considered alongside his actual conduct in procuring the vessel, taking it to the loading point, receiving the itinerary, and steering the boat, furnished an adequate predicate for the court below to apply the captain enhancement. See United States v. Guerrero, 114 F.3d 332, 346 (1st Cir. 1997) (upholding pilot enhancement under USSG §2D1.1(b)(3)(C); cf. United States v. Trinidad, 839 F.3d 112, 115-16 (1st Cir. 2016) (upholding navigator enhancement under USSG §2D1.1(b)(3)(C) where defendant had relied on GPS to keep the boat on course for some part of voyage).

To sum up, this is not a case in which we are left "to fend for ourselves" in order to understand the basis on which the district court concluded that the captain enhancement was appropriate. McDowell, 918 F.2d at 1012. The PSI Report and the transcript of the disposition hearing, taken together, furnish clear guidance as to the basis on which the court rested the enhancement. Because that basis was plausible, "we cannot say that [the sentencing court's] conclusions were unfounded or clearly erroneous." United States v. Ruiz, 905 F.2d 499, 508 (1st Cir. 1990) (quoting United States v. Jimenez-Otero, 898 F.2d 813, 815 (1st Cir. 1990)).[2]

## B.  Alleged Breach of Plea Agreement.

This brings us to the appellant's claim that the government breached the Agreement. Since the appellant failed to raise this claim below, our review is for plain error. See United States v. Almonte-Nuñez, 771 F.3d 84, 89 (1st Cir. 2014).

---

[2] The appellant argues in his reply brief that applying the enhancement resulted in an unwarranted sentencing disparity between himself and his codefendants. This argument is doubly flawed. In the first place, "issues raised for the first time in an appellant's reply brief are generally deemed waived." United States v. Torres, 162 F.3d 6, 11 (1st Cir. 1998). In the second place, the "general rule of thumb is that a defendant is not entitled to a lighter sentence merely because his co-defendants received lighter sentences." United States v. Reyes-Santiago, 804 F.3d 453, 467 (1st Cir. 2015). Here, only the appellant declared himself to be the boat's captain and only the appellant received the captain enhancement. Because there is no basis for an "apples to apples" comparison among the three defendants, the claim of an unwarranted sentencing disparity founders on the merits. Id.

- 12 -

A defendant who enters into a plea agreement and thereafter pleads guilty to a criminal charge waives an array of important rights. The government, of course, is expected to carry out its side of the bargain. Consequently, courts long have held prosecutors to "meticulous standards of both promise and performance." Correale v. United States, 479 F.2d 944, 947 (1st Cir. 1973); see Santobello v. New York, 404 U.S. 257, 262 (1971). They must do more than merely pay "lip service" to the covenants undertaken in plea agreements. Almonte-Nuñez, 771 F.3d at 89.

Withal, a prosecutor's duty to observe and carry out the undertakings memorialized in a plea agreement does not exist in a vacuum. A prosecutor has a corollary duty: a "concurrent and equally solemn obligation" to provide relevant information to the sentencing court. Id. at 90. These twin obligations must necessarily coexist, with the result that "prosecutors must manage them so as to give substance to both." United States v. Saxena, 229 F.3d 1, 6 (1st Cir. 2000).

In this instance, the appellant zeros in on certain statements made by the prosecutor during the disposition hearing. Specifically, the appellant calumnizes the prosecutor for responding affirmatively to the court's inquiry about whether the appellant had identified himself as the captain of the boat and for conceding that the probation officer, given his findings and conclusions, had correctly calculated the guideline range. These

statements, the appellant asserts, worked a breach of the Agreement.

This assertion will not wash. We repeatedly have held that actions such as merely responding in factual terms to the sentencing court's questions or acknowledging the correctness of admittedly accurate guideline calculations do not amount to a breach of a plea agreement. See, e.g., United States v. Marín-Echeverri, 846 F.3d 473, 479 (1st Cir. 2017); Almonte-Nuñez, 771 F.3d at 90.

The appellant attempts to skirt these precedents by arguing that the government "unnecessarily prompted" the discussion about the appellant's role as captain. This argument rings hollow. The PSI Report recommended application of the captain enhancement, which put the issue squarely in play — so much so that the appellant's own counsel began the disposition hearing by asserting that "all three persons indicted in this case all were captains."[3] When the district court turned to the government for a response to defense counsel's argument, the prosecutor acknowledged that the appellant had identified himself

---

[3] Before us, the appellant's newly appointed counsel renews the claim that all three defendants were peas in a pod. The record does not validate that claim. Only the appellant identified himself as the boat's captain, and an examination of the presentence reports for all three defendants supports a reasonable inference that the appellant was the leader of the crew. Indeed, one of his codefendants, Váldez-Vázquez, also identified the appellant as the boat's captain.

as the captain.  That was a fact — and the prosecutor's duty of candor to the court left him no choice but to acknowledge it.

So, too, the prosecutor had no legitimate alternative but to confirm that, given the probation officer's proposed findings and conclusions, the guideline calculations limned in the PSI Report were correct.  In the spirit of the Agreement, the prosecutor immediately followed this statement by asking the court to impose the same sentence on the appellant that it had imposed on his codefendants.  The prosecutor also offered a number of reasons why the lower sentence contemplated by the Agreement should be imposed.  Taken in their entirety, the prosecutor's statements with respect to the enhancement did not cross the border into forbidden terrain.  See Almonte-Nuñez, 771 F.3d at 90.  Though the court chose to take a different path, that was not within the prosecutor's control.

We have recognized before, and today reaffirm, that the government's dual obligations at sentencing are in tension and, therefore, must be balanced carefully.  See Saxena, 229 F.3d at 5-6.  In this case, though, the government has carried out the required "legal funambulism."  Id. at 6.  Accordingly, we hold that the prosecutor's statements at sentencing did not breach the Agreement.

The appellant has one more shot in his sling: he suggests that the government breached the Agreement by defending the

sentence on appeal. For two reasons, this shot sails well wide of the mark.

First, the government does not waive anywhere in the Agreement the right to defend, on appeal, whatever sentence the district court lawfully may impose. The absence of such a restriction is significant because plea agreements are interpreted with the aid of contract-law principles, see United States v. Atwood, 963 F.2d 476, 479 (1st Cir. 1992), and the Agreement itself provides that "[t]he United States has made no promises or representations except as set forth in writing in this plea agreement and den[ies] the existence of any other term and conditions not stated herein." The appellant — like the government — is bound by the terms of the plea agreement. See United States v. Tilley, 964 F.2d 66, 70 (1st Cir. 1992). And in view of the language quoted above, there is simply no basis for extending the government's obligations in the manner suggested by the appellant.

As an appellee, the government is tasked, in effect, with defending the district court's judgment when a criminal defendant appeals.[4] In our view, the government normally should be free, on appeal, to support a ruling of the district court even

---

[4] Of course, there are narrow exceptions to this rule, such as when the government is obligated to confess error in the judgment. See, e.g., Berger v. United States, 295 U.S. 78, 88 (1935); United States v. Leahy, 668 F.3d 18, 21 (1st Cir. 2012). No such exception pertains here.

though a plea agreement precluded it below from arguing the position that underpins the ruling.  See United States v. Colón, 220 F.3d 48, 51-52 (2d Cir. 2000).  Consequently, the government was free to argue in this court — as it has done — in support of the imposition of the captain enhancement.  It has not violated the Agreement by doing so.

## III.  CONCLUSION

We need go no further.  For the reasons elucidated above, the sentence is

**Affirmed.**